STATE of Iowa, Appellant,

v.

Paula Kathleen JOHNSON, Appellee.

No. 94–723.

Supreme Court of Iowa.

March 29, 1995.

---

**2.** To the extent that *State v. Rudd,* 454 N.W.2d 570 (Iowa 1990), is inconsistent with this conclu-sion, we should overrule it.

Thomas J. Miller, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and Linda A. Hall, Asst. County Atty., for appellant.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellee.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

SNELL, Justice.

In this case, the State appeals the district court's dismissal of a charge of neglect or abandonment of a dependent person against Paula Kathleen Johnson. The charge arose from the alleged mistreatment of Johnson's husband, Wallace Earhardt Johnson. The district court held that the relevant section of the Iowa Code only applies to situations in which an individual has legal custody of another. We reverse and remand.

I. Factual Background

Wallace and Paula Johnson married on May 7, 1982. In 1986, physicians diagnosed Wallace as suffering from Parkinson's disease. Wallace's illness gradually became more severe over the years. Wallace also suffered from hypertension, depression, and hyperuricemia.

Beginning in 1991, Wallace's condition deteriorated to the point at which he became totally dependent on Paula for daily care and maintenance. During the summer and autumn of 1993, Wallace's condition worsened to the point where he could not walk at all, even with the help of a cane. Paula dominated and controlled Wallace and isolated him from his family. Wallace depended on Paula to feed him and give him medication for Parkinson's disease and depression. Wallace would not speak to other people when Paula was in the room.

At approximately 6:30 a.m. on November 8, 1993, Wallace arose from his bed and attempted to walk to the kitchen to get something to eat. He fell to the floor due to his weakened state and was unable to get back up. He yelled to Paula who was sitting in the living room watching television, but she refused to help him get up and he laid on the floor for about an hour. At the end of the hour, Paula came into the room and kicked and punched him in the face while he lay on the floor. She then finally picked him up and threw him back on the bed but then shoved him back on the floor and choked him with her hands.

Wallace laid on the floor until approximately 1:00 p.m. when he heard Paula leave the house. He then made his way to the telephone, called a friend and told him to dial "911." The friend called the authorities. Paramedics and police arrived at the scene during the same afternoon. The paramedics asked Paula if there was someone at the residence who needed help. Paula answered "no" and stated that she was the only one living there. Upon hearing noises behind Paula in the house, the paramedics entered and found Wallace lying on the floor. He had a broken nose, numerous bruises, and was bleeding from lacerations on his ears. Wallace was treated and immediately transported to the hospital. Three months later, he died.

The State filed a trial information against Paula charging her with: (1) neglect or abandonment of a dependent person, in violation of Iowa Code section 726.3 (1993); (2) assault with intent to inflict serious injury, in violation of Iowa Code sections 708.1 and .2(1); and (3) wanton neglect of a dependent adult, in violation of Iowa Code section 726.8(1). Paula responded by filing a motion for bill of particulars asserting that the State had not described the offenses associated with counts one and three with sufficient particularity. Paula subsequently withdrew her motion with regard to the third count.

The district court granted Paula's motion and ordered the State to file a notice to the defense of how it intended to prove that Paula was the custodian of Wallace. The court noted that the evidence did not indicate

Paula had ever been declared to be Wallace's legal guardian and expressed a concern over whether section 726.3 applied to situations where no legal guardianship existed. The State responded by filing a bill of particulars which stated that Paula was Wallace's sole caretaker and he relied on her entirely for all of his basic needs.

Paula thereafter filed a motion to dismiss which asserted the State's bill of particulars failed to give particulars which constituted the offense of neglect or abandonment of a dependent person because Paula was not Wallace's legal guardian. The district court dismissed the charge of neglect or abandonment of a dependent person on the ground that custody, an element of the crime, required the existence of legal custody and no such custody existed. The State appealed the district court's ruling to this court.

II. Standard of Review

■■■ We review a trial court's grant of a motion to dismiss a charge asserted in a trial information for errors of law. *State v. Sullins,* 509 N.W.2d 483, 485 (Iowa 1993); *cf. State v. Stanley,* 351 N.W.2d 539, 540 (Iowa App.1984). We also review matters of statutory construction for errors of law. *Sullins,* 509 N.W.2d at 485; *State v. Stanford,* 474 N.W.2d 573, 575 (Iowa 1991). We accept as true the facts the State has alleged in the trial information and attached minutes. *Sullins,* 509 N.W.2d at 484; *State v. Doss,* 355 N.W.2d 874, 881 (Iowa 1984). We will reverse the trial court's dismissal of the charge at issue if the facts the State has alleged charge a crime as a matter of law. *Doss,* 355 N.W.2d at 881.

III. Construction of Section 726.3.

At issue in this case is interpretation of Iowa Code section 726.3 which provides:

A person who is the father, mother, or some *other person having custody* of a child, or any other person who by reason of mental or physical disability is not able to care for the person's self, who knowingly or recklessly exposes such person to a hazard or danger against which such person cannot reasonably be expected to protect such person's self or who deserts or abandons such person, knowing or having reason to believe that the person will be exposed to such hazard or danger, commits a class "C" felony.

(Emphasis added.) The State argues that the legislature intended the phrase "other person having custody" to carry its normal, non-technical meaning. The State therefore argues that the statute does not only apply to individuals who have legal custody of a disabled person. The defense argues, and the trial court held, that section 726.3 only applies to instances of wrongdoing on the part of an individual carrying the status of legal custodian.

■■■ In construing statutes, our goal is to determine and give effect to the legislature's intention. *Sullins,* 509 N.W.2d at 485. We seek a reasonable interpretation which will best effectuate the purpose of the statute and redress the wrongs the legislature sought to remedy. *Id.; Krueger v. Iowa Dep't of Transp.,* 493 N.W.2d 844, 845 (Iowa 1992). We will consider all parts of an enactment together and will not place undue importance on any single or isolated portion. *General Elec. v. Iowa State Bd. of Tax Review,* 492 N.W.2d 417, 420 (Iowa 1992).

■■ Chapter 726, "Protection of the Family and Dependent Persons," does not define the term "custody," nor do other sections of the Iowa Code. However, different sections do use language similar to section 726.3. Section 726.5, "Nonsupport," uses the phrase "other person having legal custody of the child or ward." A consideration of this section with section 726.3 would suggest the 726.3 language does not require the existence of legal custody because in 726.5 the legislature has demonstrated it can specifically state "legal custody" when it so intends. In addition, 726.5 refers to a "child or ward" while 726.3 refers to a child or "any other person." If the legislature had intended 726.3 to only apply in instances of legal custody it could foreseeably have also used the phrase "child or ward."

While 726.5 appears to suggest 726.3 does not require the existence of legal custody, section 726.6, "Child endangerment," adds to the complexity of the issue by using the

phrase "parent, guardian, or person having custody or control over a child." On the one hand, one could argue that this language implies that when the legislature intends to refer to non-legal custody, it will clarify by using the term "control." However, custody, in its ordinary sense, means "the care *and* control of a thing or person." Black's Law Dictionary 347 (5th ed. 1979) (emphasis added). Therefore, if we were to interpret section 726.3 to apply to situations involving non-legal custody, this would not render the words "or control" superfluous in section 726.6 because an individual could have "control" over a child without also having ordinary custody of a child. "Control" only refers to the state of having restricting or governing power over someone, while "custody" implicates not only a power of oversight but also a responsibility for the care of an individual. Black's Law Dictionary at 298, 347. Therefore, the reach of section 726.6 is broader than section 726.3.

Section 726.8, "Wanton neglect or nonsupport of a dependent adult," uses the phrases "caretaker," and "person who has legal responsibility." For purposes of this section the definitions in section 235B.2 are used. Iowa Code section 235B.2 defines "caretaker" as "a related or nonrelated person who has the responsibility for the protection, care, or custody of a dependent adult as a result of assuming the responsibility voluntarily, by contract, through employment, or by order of the court." A caretaker therefore embraces both individuals who have legal and non-legal responsibility to care for and oversee an adult. As a result, one could foreseeably argue that the legislature could have used the word "caretaker" in section 726.3 if it had intended to refer to individuals with both legal and non-legal responsibility for adults. However, section 726.3 refers to both dependent adults and children and therefore use of the term "caretaker" would not have been appropriate in section 726.3.

■ The history of section 726.3 also suggests the legislature intended it to apply to all instances where circumstances charge a person with the care and control of an individual. When interpreting a revised statute, we may look to the prior form of the statute

for evidence of legislative intent. *Collins v. Kenealy*, 492 N.W.2d 679, 682 (Iowa 1992). The predecessor to section 726.3, entitled "Exposing and abandoning child," provided in relevant part:

> If the father or mother of any child under the age of six years, or *any person to whom such child has been entrusted or confided*, expose such child in any ... place, with intent wholly to abandon it, he or she ... shall be imprisoned ... not exceeding five years.

Iowa Code § 731.7 (1977) (emphasis added). In *State v. Sparegrove*, 134 Iowa 599, 601, 112 N.W. 83, 84 (1907), this court considered the same challenge we face today to an early version of this section which differed from the 1977 formulation only in that "entrusted" was spelled "intrusted."

In *Sparegrove*, the State charged an individual with violation of this section for abandoning a baby on a woman's doorstep at the direction of the baby's parents. *Sparegrove*, 134 Iowa at 600, 112 N.W. at 84. The defendant argued that the language "intrusted or confided" only referred to situations in which an individual held legal custody of a child. *Sparegrove*, 134 Iowa at 601, 112 N.W. at 84. The court held that the section was not so limited and held that the State properly charged the defendant with the crime because the defendant "undertook ... to take charge of [the baby] and care for it." *Id.* To be in charge of an individual and to hold the responsibility to care for that individual is precisely the definition of custody.

We note that the legislature in arriving at the present section 726.3 has altered the statute to include neglect or abandonment of all dependents and not merely children under the age of six. The section is also currently expressed, in some instances, with greater precision so as to avoid unnecessary language. For example, the legislature has replaced the phrase "expose ... in any highway, street, field, house or outhouse, or ... any other place" with the phrase "expose ... to a hazard or danger." Although we note these changes, we will not construe a statutory revision to alter the meaning of the statute unless legislative intent to do so is clear and unmistakable. *Kenealy*, 492 N.W.2d at

682; *State v. Spargo,* 364 N.W.2d 203, 211 (Iowa 1985).

We hold that in amending the section at issue, the legislature did not intend to alter its meaning or reach to apply only to instances where legal custody exists. It is the manifest intent of the legislature to hold section 726.3 applicable to all situations in which one individual may be charged with the care and control of another. We therefore reverse the trial court's dismissal of the charge of neglect or abandonment of a dependent person against Paula Johnson and remand for further proceedings.

**REVERSED AND REMANDED.**