# IN THE SUPREME COURT OF IOWA

No. 20 / 04-1368

Filed April 28, 2006

**STATE OF IOWA,**

Appellee,

vs.

**SANDRA JOY STELLA LECKINGTON,**

Appellant.

_____

Appeal from the Iowa District Court for Scott County, Bobbi M. Alpers, Judge.

Defendant appeals her conviction for neglect of a dependent, child endangerment resulting in serious injury, and providing alcohol to a minor. **AFFIRMED.**

Penelope R. Souhrada, Davenport, for appellant.

Thomas J. Miller, Attorney General, Kristin Guddall, Assistant Attorney General, William E. Davis, County Attorney, and Julie A. Walton, Assistant County Attorney, for appellee.

**STREIT, Justice.**

When children fail in their own judgment, responsible adults must step up. A mother made some horrible decisions concerning her son's drunken friend, almost costing him his life. A jury convicted the defendant, Sandra Leckington, of neglect of a dependent child, child endangerment resulting in serious injury, and providing alcohol to a minor. On appeal, Leckington contends there was insufficient evidence to prove key elements of the neglect and child endangerment charges. In addition, she contends the trial court abused its discretion by making her sentences for the neglect and child endangerment charges consecutive. She also argues her trial counsel was ineffective for failing to file a motion to suppress and for making misstatements during his motion for judgment of acquittal. Because we find there was sufficient evidence to support the verdict, the trial court did not abuse its discretion in sentencing, and her trial counsel's misstatements during his motion for judgment of acquittal did not amount to ineffective assistance, we affirm. However, the question of whether her trial counsel was ineffective for failing to file a motion to suppress is preserved for postconviction proceedings.

## I.  Facts and Prior Proceedings

On December 17, 2003, Sandra Leckington purchased a half-gallon of vodka to help her eighteen-year-old son, Curtis Jenkins, "celebrate" his impending stint of probation. Jenkins and a group of friends procured more vodka and alcohol so that they could make "jungle juice"[1] for a party at Dominic Major's apartment.

---

[1]According to Wikipedia,

> [j]ungle juice is the name given to a mix of liquor that is usually served for the sole purpose of becoming intoxicated . . . .  Often, it may include leftovers of many liquors along with a mixer (juice, cola, etc.) to make the

Eleven days later, Sandra allowed her younger son, Shawn Yuille, to have his friend, Travis Talbot, spend the night at their home. The next day, the two thirteen-year-old boys left the Leckington home and went a few houses down the block to Travis's home so that Travis could check in with his mother. The two boys then joined Sandra for lunch at a restaurant. After lunch, the boys told Sandra they were going to ride their bicycles around the neighborhood. The boys went down the block to the apartment of Dominic Major. Travis and Shawn proceeded to play video games and drink the leftover vodka. Travis consumed three to four glasses of vodka and started to become a problem for Major.

At 2:07 p.m., Major called Sandra and told her to pick up the two boys because Travis was "pretty trashed." On the way to Major's apartment, Sandra picked up her husband, Mark Leckington, from the local convenience store. By the time Sandra arrived at the apartment, Travis was so intoxicated he was having difficulty standing and walking. At one point, he fell and hit his head on one of the pillars of the apartment building. Major carried Travis from the apartment building to the car. Once Travis was placed in the back seat of the car, he immediately slumped over. One witness thought Travis was unconscious when he was placed in the car. Mark asked whether Travis had been drinking, but Sandra, even though she had been told Travis was "pretty trashed," told Mark that Travis had not been drinking. Mark then asked Shawn what was wrong with Travis. Shawn told him that they had been wrestling around and Travis hit his head. Sandra drove around the block to the Leckington home. According to Sandra, Mark, and Shawn,

clash of liquors easier to swallow . . . . Jungle juice made with Kool-Aid is called "Hunch Punch."

Jungle juice, http://en.wikipedia.org/wiki/Jungle_Juice (last visited March 28, 2006).

Travis walked, unaided, out of the car and into the home. After the boys entered the home, Sandra and Mark left to run errands.

Once inside the Leckington home, Travis collapsed on the kitchen floor. Shawn tried to revive Travis by pouring milk down his throat. When this did not work, he went back outside and found some friends to help carry Travis upstairs to the bathtub. The boys then ran cold water on Travis in hopes of reviving him. Travis did not wake up, and he began to foam at the mouth.

Approximately an hour after they left the boys at their home, Sandra and Mark returned home. Mark went to a room in the back of the home. One of the children in the house told Sandra that Travis was "dead" and lying in the bathtub. Sandra "freaked out." She told the boys they had to get Travis out of the bathtub and out of the house. While moving Travis out of the tub, Sandra proclaimed "You know how much trouble I'm going to get into, this little f***er had to drink alcohol, I'm not going to jail for this motherf***ing bastard." She helped drag Travis down the stairs, but the boys refused to help her put Travis outside in the cold December air. Sandra went to Mark and told him about Travis. Mark told her to call Travis's mom. Travis's mother told Sandra to call 911.

When the paramedics arrived, Travis had a very weak pulse, his mouth was clenched shut, he was extremely cold, his skin had a blue coloring, and his clothing was wet. Travis was rushed to University of Iowa Hospitals and Clinics in Iowa City via helicopter and placed in pediatric intensive care. Travis regained consciousness fourteen hours later. A doctor testified that his blood alcohol content was approximately .3 when he reached the hospital, and that he was at risk of death from the high level of alcohol in his blood.

The State filed a multi-count trial information charging Sandra Leckington with the offenses of child endangerment resulting in serious injury in violation of Iowa Code section 726.6(4) (2003), neglect of a dependent person in violation of section 726.3, and providing alcohol to a minor resulting in serious injury in violation of section 123.47(5).

Sandra Leckington was convicted of child endangerment resulting in serious injury, neglect of a dependent person, and the lesser offense of providing alcohol to a minor. The court sentenced her to consecutive terms of ten years for the child endangerment and neglect charges and a one-year, concurrent term for providing alcohol to a minor.

## II. Issues

### A. Sufficient Evidence

Sandra challenges the sufficiency of the evidence supporting various elements of her convictions for child endangerment resulting in serious injury and neglect of a dependent person. In regards to the child-endangerment-resulting-in-serious-injury conviction, she claims there was insufficient evidence to prove: (1) she had "control" or "custody" of Travis; (2) she knowingly acted in a manner which created risk to Travis; (3) she willfully deprived Travis of health care or supervision; or (4) her actions resulted in serious injury to Travis. In regards to the neglect-of-a-dependent conviction, she claims there was insufficient evidence to prove she had custody of Travis or that she knowingly or recklessly exposed Travis to a hazard or danger from which he could not reasonably be expected to protect himself. We will discuss each argument in turn.

### 1. Standard of Review

The standard of review for insufficient-evidence claims is for correction of errors of law. *State v. Petithory*, 702 N.W.2d 854, 856 (Iowa

2005). The jury's findings of guilt are binding on appeal if the findings are supported by substantial evidence. *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998). Substantial evidence is evidence that could convince a rational trier of fact that a defendant is guilty beyond a reasonable doubt. *Id.* When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record. *State v. Casady*, 597 N.W.2d 801, 804 (Iowa 1999).

### 2. Child Endangerment Resulting in Serious Injury

In order to convict Sandra of child endangerment resulting in serious injury, the jury had to find: (1) Sandra was the parent, guardian, or person having custody or control over Travis; (2) Travis was under the age of fourteen; (3) Sandra knowingly acted in a manner creating a substantial risk to Travis's physical, mental, or emotional health or safety, or Sandra willfully deprived Travis of necessary health care or supervision appropriate to Travis's age when she was reasonably able to make the necessary provisions and which deprivation substantially harmed Travis's physical, mental, or emotional health; and (4) Sandra's act resulted in serious injury to Travis. *See* Iowa Code § 726.6.

### a. Control

Jury instruction no. 35 defined "a person having control over a child" as either of the following:

> a. A person who has accepted, undertaken, or assumed supervision of a child from the parent or guardian of the child.

> b. A person who has undertaken or assumed temporary supervision of a child without explicit consent from the parent or guardian of the child.

These two definitions, which are repeated nearly verbatim from the statute setting forth the crime of child endangerment, are appropriate definitions of the term "control." *See id.*

Sandra contends she did not have "control" of Travis because she did not have control of the instrumentality creating the risk to Travis (the vodka). She points out that she was not present when Travis consumed the vodka and that the State did not prove she purchased the specific vodka Travis actually consumed.

Even if we agree that Sandra did not have control over the instrumentality creating the risk to Travis, this fact would not change our analysis of whether there was sufficient evidence to find Sandra had control over *Travis.*

Sandra's exercise of control over *Travis* begins with her decision to go to Major's apartment to pick him up after Major told her that Travis was "pretty trashed." When she then chose to move Travis, in his vulnerable condition, to a different location she undertook the supervision of Travis and therefore exhibited the control necessary for the crime of child endangerment. *See id.* § 726.6(3).[2]

**b.      Knowingly Acted in a Manner Creating a Substantial Risk**

Sandra contends there was not sufficient evidence to establish she had conscious awareness, or actual knowledge, that she was acting in a manner that created a substantial risk to Travis's health. The statute at issue prohibits "knowingly act[ing] in a manner that creates a substantial risk to the child or minor's physical, mental, or emotional health or

---

[2]Sandra also argues her act of driving the vehicle did not establish that she had control over the instrumentality creating the risk to Travis because there was no evidence she drove the vehicle in a manner that put Travis at risk. This argument is irrelevant because the jury was not instructed that a person who operates a motor vehicle with a child present in the vehicle has control for the purposes of child endangerment. *See* Iowa Code § 726.6(2).

safety." *See id.* § 726.6(1)(*a*). We interpret the word "knowingly" in this statute to mean "the defendant acted with knowledge that [he or] she was creating substantial risk to the child's safety." *State v. James*, 693 N.W.2d 353, 357 (Iowa 2005). Sandra claims she had no idea how much alcohol Travis had consumed. She further argues that, based on the time she picked him up, Travis was not showing symptoms of a severely intoxicated person. In essence, she argues that knowledge requires more than she "should have known" Travis was in a vulnerable position.

Sandra's argument that she was not cognizant of Travis's condition is not supported by the record. Major specifically told her that Travis had been drinking and was "pretty trashed." She saw Travis stumble and fall and hit his head. She watched Major carry Travis to her car. She also saw Travis slump over in the car. The jury was not required to believe her self-serving version of the facts. *See State v. Arne*, 579 N.W.2d 326, 328 (Iowa 1998) (stating a jury is not required to accept the defendant's version of the facts); *State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence.").

There was abundant evidence to prove Sandra knew Travis was severely intoxicated. Expert testimony, along with a good dose of common sense, would enable a rational trier of fact to conclude Sandra knowingly created a substantial risk to Travis's physical health when she left him at her home without further adult supervision.

### c. Willful Deprivation of Health Care or Supervision

Sandra also contends there was not sufficient evidence to establish she *willfully* deprived Travis of necessary health care. The jury instructions did not provide a definition of the word "willful." We have

previously held "[a] dictionary definition of 'willful' fixes the meaning of that word as 'said or done deliberately or intentionally.'" *State v. Tippett*, 624 N.W.2d 176, 178 (Iowa 2001) (quoting Webster's Twentieth Century Dictionary 2093 (unabr. ed. 1979)). We have also stated willfulness is established by proof of intentional and deliberate conduct undertaken with a bad purpose, in disregard for the rights of another, or contrary to a known duty. *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995). Either definition is appropriate for this case.

Sandra alleges the seriousness of Travis's condition was not evident during the short period of time in which she picked Travis up and dropped him off at her house. She also contends she obtained care for Travis as soon as she returned home and realized the nature of his condition. Therefore, she argues, there was no evidence to support the finding that she made a deliberate, intentional, or conscious decision to deprive Travis of necessary medical care or supervision. The facts belie her arguments.

Sandra knew of Travis's condition when she picked him up from Major's apartment—Major told her Travis was "pretty trashed," she saw Travis fall and hit his head, and she saw him carried to her car. Rather than taking him to the hospital or to his mother or at least monitoring his condition, she decided to move him to an unsupervised location and leave him there. Her decision, to leave the boy in an unsupervised location rather than to provide necessary health care or at least supervision, was intentional and deliberate.

Sandra's further actions are also significant. Even after she returned home and found Travis unconscious in her bathtub, she did not immediately call for help. Instead, she tried to move him out of her house because, as she stated at the time she was dragging him out of the

bathtub and down the stairs, "I'm not going to jail for this motherf***ing bastard." There was substantial evidence to support the conclusion that she tried to move Travis out of her house—rather than call for medical help—because she did not want to be implicated in any potential criminal investigation. The decision to put her own fear of criminal prosecution above the medical needs of a child who was unconscious and foaming at the mouth was an intentional and deliberate decision. Although she was unable to completely execute her plan because the other children refused to help her move Travis outside, she nonetheless deprived Travis of medical care until at least the time the other children thwarted her plan. Iowa Code section 726.6 does not have a temporal requirement for the length of time a person must willfully deprive a child of health care, but we find the delay caused by Sandra, when coupled with the seriousness of Travis's condition, was sufficient to satisfy section 726.6. The record contains substantial evidence to support a finding that Sandra willfully deprived Travis of necessary health care.

### d.    Act Resulting in Serious Injury to Travis

Sandra claims the serious injury to Travis was the result of the quantity of alcohol that he drank and the hypothermia resulting from being placed in the bathtub of cold water, not from any action on her part.

A rational trier of fact did not have to conclude Sandra made Travis drink the alcohol or that she placed him in the tub full of cold water in order to find her actions resulted in serious injury to Travis. Her action, moving Travis to a private location and leaving him there without adult supervision, allowed a group of minors to make life-threatening choices regarding Travis's physical care. Her actions also were an obstruction to adequate medical assistance. During the time she was gone, Travis's

breathing slowed to only five or six breaths per minute and he vomited in his own mouth. Either condition was potentially lethal and subjected Travis to serious injury. *See* Iowa Code § 702.18 (" 'Serious injury' means . . . [b]odily injury which . . . [c]reates a substantial risk of death.").

### 3.    Neglect of a Dependent Person

In order to convict Sandra of neglect of a dependent person, the State had to prove: (1) Sandra was a person having custody of Travis on the day in question, (2) Travis was a person under the age of fourteen, and (3) Sandra knowingly or recklessly exposed Travis to a hazard or danger against which he could not reasonably be expected to protect himself. *See id.* § 726.3. As we have already decided Sandra knowingly exposed Travis to a hazard or danger, we only analyze Sandra's argument that there was no evidence she had "custody" of Travis.

In *State v. Johnson*, 528 N.W.2d 638, 642 (Iowa 1995), we held that the term custody in section 726.3 is not limited to legal custody. We concluded custody under this statute meant "[t]o be in charge of an individual and to hold the responsibility to care for that individual." *Johnson*, 528 N.W.2d at 641. We also stated that custody implicates not only a power of oversight, but also a responsibility for the care of an individual. *Id.*

Although Travis's parents did not expressly ask Sandra to take custody of their son, Sandra voluntarily undertook this responsibility by taking Travis from Major's apartment and moving him to her home. The key facts in this decision are Travis's helpless condition, Sandra's knowledge of that condition, and Sandra's decision to physically move Travis to a different location. When one chooses to move someone in a helpless condition, they not only take charge of that person, but they

also assume responsibility for that person, at least until a third person assumes responsibility for the dependent person. *See id.* (stating " 'custody' implicates not only a power of oversight but also a *responsibility* for the care of an individual" (emphasis added)). By electing to move Travis to her home while he was in a helpless condition, Sandra assumed custody of Travis for the purpose of this statute.

### B. Abuse of Discretion in Sentencing

Sandra contends the district court abused its discretion when it sentenced her to consecutive ten-year sentences for child endangerment resulting in serious injury and neglect of a dependent person.

We review a district court's decision to impose consecutive sentences for abuse of discretion. *State v. August*, 589 N.W.2d 740, 744 (Iowa 1999). An abuse of discretion will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable. *State v. Mudra*, 532 N.W.2d 765, 766-67 (Iowa 1995). When applying its discretion, the court should

> [w]eigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual.

*August*, 589 N.W.2d at 744 (quoting *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967)); *accord* Iowa Code § 901.5 (providing that an appropriate sentence "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others").

Sandra argues the district court abused its discretion because it imposed consecutive sentences solely because of the nature of the

offense. *See State v. McKeever*, 276 N.W.2d 385, 387 (Iowa 1979) (holding the nature of the offense is but "one factor to be considered . . . the punishment must fit the particular person and circumstances under consideration . . . and no single factor, including the nature of the offense, will be solely determinative"). The court's statement at sentencing does indicate the court placed considerable emphasis on the serious nature of the crimes committed. The court stated:

> I note that the defendant does not have a prior criminal history of any serious extent whatsoever; however the sentence imposed today is imposed because of the very serious nature of the charges [of] which you were convicted, Ms. Leckington. I think that, in hearing the testimony in this case, this was a real disaster in the making, and I think we all feel—I'm sure including you—very thankful that Travis pulled out of this as well as he did. But the fact that your conduct was so serious, in failing to provide this child with the assistance that he required at the time he was transported to your home and in your home, simply causes the Court to find that it's appropriate to impose the serious sentence of consecutive sentences on Counts 1 and 2.

However, further analysis of the court's statement shows that the court considered other factors pertinent to sentencing. In the following passage, the court considered Sandra's character and propensities and chances for reform when it stated:

> I note that there are issues that are identified in your presentence investigation as needs, that you need to address, and the first one is to be responsible for your actions, and to work toward a better understanding of your behaviors with respect to responsibility and consequences. You need to be sober and drug free, complete all recommended substance abuse treatment and aftercare, need to obtain mental health treatment, and need to work on health-related issues.

The court went on to state that it believed she would need a long time to address all of the issues before her. The court also stated consecutive periods of incarceration would be needed to "make sure that other young

people in the community are safe, because this showed very, very bad judgment on your part, . . . and I frankly would be concerned that if your children weren't in danger, that other children in the community would be."

All of these statements indicate the court considered multiple factors when making its sentencing decision. We find no abuse of discretion. *See, e.g., State v. Johnson*, 476 N.W.2d 330, 335 (Iowa 1991) (finding trial court did not abuse its discretion in imposing consecutive sentences for robbery and sexual abuse convictions where the sentences "fit both the crime and the individual").

### C.   Ineffective Assistance of Counsel

Sandra claims her trial counsel was ineffective for two reasons:  (1) he made an inadequate motion for judgment of acquittal that did not sufficiently distinguish between the elements of control and custody; (2) he failed to file a motion to suppress a videotaped interview that was conducted hours after Travis was taken to the hospital.

Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).  Ineffective-assistance claims are generally reserved for postconviction relief actions in order to allow full development of the facts surrounding counsel's conduct.  *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006).  However, when the record is adequate, we will consider such claims on direct appeal.  *Straw*, 709 N.W.2d at 133.  As discussed below, the record is adequate to consider Sandra's claim that her trial counsel made an inadequate motion for judgment of acquittal, but it is not adequate to consider whether her trial counsel improperly failed to file a motion to suppress.

To establish ineffective assistance, the defendant has the burden to prove:  (1) his or her trial counsel failed in an essential duty and (2)

prejudice resulted from counsel's error. *Id.* To prove the prejudice element of ineffective assistance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984). Ineffective-assistance claims fail if the defendant cannot prove both prongs. *State v. Martin*, 704 N.W.2d 665, 669 (Iowa 2005).

Sandra contends she received ineffective assistance because her trial counsel inadequately distinguished between the concepts of custody and control when, in his oral motion for judgment of acquittal, he stated "if there is no control, there can be no abandonment." Sandra claims this was an erroneous statement because, under the elements of the charge of neglect or abandonment of a dependent person, if there is no *custody* there can be no abandonment.

While her trial counsel may have misstated the distinction between control and custody, Sandra cannot show this misstatement prejudiced her in any way. As discussed above, there was sufficient evidence to find that Sandra had *both* control and custody of Travis at the time of this incident. Therefore, Sandra is unable to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. Without proof of prejudice, her ineffective-assistance claim necessarily fails. *See State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003) (recognizing failure to prove either prong is fatal to ineffective-assistance-of-counsel claims).

Sandra also argues her trial counsel provided ineffective assistance because he did not file a motion to suppress a videotaped interview. Sandra's claim is hampered by her trial counsel's decision not to make a

record about the circumstances surrounding the interview. Because the record is inadequate for our review, we preserve this claim for postconviction relief proceedings.

### III. Conclusion

Sufficient evidence supports the verdict. The trial court did not abuse its discretion in imposing consecutive sentences, and Sandra did not prove she received ineffective assistance of counsel. We therefore affirm the judgment of the district court. Her ineffective-assistance claim pertaining to the taped interview is preserved for postconviction relief proceedings.

**AFFIRMED.**