# IN THE COURT OF APPEALS OF IOWA

No. 15-1631
Filed August 17, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DEREK MCKAY,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

The defendant challenges his convictions for manufacturing methamphetamine and child endangerment. **AFFIRMED.**

Thomas J. O'Flaherty of O'Flaherty Law Firm, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ. Tabor, J., takes no part.

**POTTERFIELD, Presiding Judge.**

Derek McKay appeals from his convictions for manufacturing a controlled substance (methamphetamine) in an amount more than five grams and child endangerment.[1] McKay maintains neither his conviction for manufacturing methamphetamine nor his conviction for child endangerment is supported by substantial evidence. In the alternative, McKay maintains the sentence he received for manufacturing methamphetamine is cruel and unusual.

**I. Background Facts and Proceedings**

In May 2015, McKay was charged by trial information with multiple charges involving the possession of precursors used to manufacture methamphetamine, the manufacture of methamphetamine, and endangerment of a child.

McKay waived his right to a jury trial, and the matter was tried to the bench in August 2015. Several officers and criminalists testified as follows:

Police officers became interested in McKay after learning some of his associates were making unusual purchases of pseudoephedrine. Eventually, officers did a "trash pull" at the home on Crestview Drive where McKay appeared to be living. Officers recovered lithium battery packs, more than fifty foil balls with residue—some of which were tested at the scene and confirmed to be methamphetamine—and mail with McKay's name[2] on it.

---

[1] As a result of the same bench trial, McKay was also convicted of possession of pseudoephedrine with the intent to manufacture a controlled substance (methamphetamine). None of his claims on appeal challenge this conviction or sentence.

[2] The mail had McKay's name, but it listed a different address.

Because of interactions officers witnessed between McKay and one of his later codefendants, Amber Moore-Herschman, officers conducted a trash pull of Moore-Herschman's residence on 17th Street as well. Officers recovered ten aluminum foil balls with residue, with those tested on the scene again giving a positive result for methamphetamine, and an empty pseudoephedrine pack.

On April 15, 2015, as officers were observing the home on 17th Street in preparation for executing a search warrant, they saw McKay's eleven-year-old daughter being picked up from the home by her mother. McKay was seen leaving the premises shortly thereafter. Officers then entered the residence and located several items commonly used to manufacture methamphetamine. Officer Doug Scott testified they found:

> [F]oils used to ingest methamphetamine, straws used to inhale the smoke off of the foils; coffee filters, which [could be] use[d] to strain methamphetamine in the process; less than a gram and a half of methamphetamine; nine empty blister packs; some cold packs that contained ammonium nitrate, also a precursor for the manufacturing of methamphetamine; hydrochloric acid generations; [and] reactionary vessels containing sludge or the remnants of a methamphetamine process.

Based on the items found in the search of the 17th Street residence and earlier officer surveillance of McKay traveling back and forth between the two residences, the officers applied for and received a warrant to search the residence on Crestview Drive as well.

Officers surveilling the residence on Crestview Drive saw McKay leave that residence and noted the vehicle did not have a front license plate, as required by law. McKay was stopped, and during a pat down of his person, a ball of aluminum foil was found in his pocket. A field test showed the foil had

methamphetamine residue on it, and McKay was arrested and taken into custody. While in custody, McKay told an officer that he and his children had been staying at the residence on 17th Street. Additionally, when officers later searched the vehicle, they found approximately 1.5 grams of methamphetamine as well as empty lithium battery packs.

As the officers entered the residence on Crestview Drive, they could immediately smell that there was a hydrochloric acid generator somewhere in the home. The officers ultimately located a tied-up shopping bag with several bottles that were being used to manufacture methamphetamine. In a suitcase in the room appearing to be McKay's bedroom, officers found a soda bottle containing sludge, solvent, and lithium pieces; a container of lye; a Coleman fuel can; a small glass container with an acidic liquid inside; and a container which had been modified to act as a hydrochloric acid generator. Based on the contents of the soda bottle, Officer Matthew Ahlers opined that it was "towards step 2 of the process" of manufacturing methamphetamine; he further explained that it was either mid-process or someone "has not started yet in the process of converting the pseudoephedrine into the meth oil." Additionally, in the basement, officers located "cut-up" batteries, lithium battery casings, ammonium nitrate packaging, and boxes of ammonium nitrate.

At both residences, officers found that the packaging from the pseudoephedrine and the cold compresses were being put through shredders, apparently in an attempt to conceal their identity.

Between March 2009 and April 2, 2015, McKay made forty-six purchases of pseudoephedrine, with fourteen of the purchases taking place in the year

leading up to his arrest. He told officers he made those purchases for normal, legal use by himself and his children. However, no explanation was offered why he was shredding the packages after using the pseudoephedrine rather than simply disposing of them.

On August 17, 2015, the district court filed its findings of fact, conclusions of law, and verdict. The court ultimately acquitted McKay of four charges and found him guilty of manufacturing a controlled substance (methamphetamine) in an amount more than five grams, possession of pseudoephedrine with the intent to manufacture a controlled substance (methamphetamine), and child endangerment.[3]

McKay was sentenced to a term of incarceration not to exceed twenty-five years for his conviction for manufacturing methamphetamine, with a one-third mandatory minimum imposed. He received a five-year sentence for each of his other two convictions, and all three sentences were ordered to run concurrently.

McKay appeals.

## II. Standard of Review

We review claims regarding the sufficiency of evidence for corrections of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). The trial court's findings of guilt are binding on appeal if supported by substantial evidence. *Id.* Because the case was tried to the court, McKay may challenge the sufficiency of the evidence on direct appeal regardless of whether he moved for judgment of acquittal. *See id.*

---

[3] Originally, the court also found McKay guilty of possession of methamphetamine, in violation of Iowa Code section 124.401(5) (2015), but it set the conviction aside following McKay's motion for judgment of acquittal.

We review de novo claims that a sentence violates the constitutional prohibition against cruel and unusual punishment. *State v. Null*, 836 N.W.2d 41, 45 (Iowa 2013).

**III. Discussion**

**A. Sufficiency of Evidence: Manufacturing Methamphetamine**

McKay maintains there was not substantial evidence to support his conviction for manufacturing a controlled substance (methamphetamine). In order to establish his guilt, the State had the burden to prove on or about the 15th of April, McKay (1) manufactured methamphetamine, (2) knew the substance he was manufacturing was methamphetamine, and (3) the amount of methamphetamine or compound, mixture, or preparation containing a detectable amount of methamphetamine was more than five grams. *See* Iowa Code § 124.401(1)(b)(7).

McKay does not dispute that methamphetamine was being manufactured or that the amount was more than five grams. Rather, he asserts there is not substantial evidence to establish that he was the person doing so. He maintains there is "ample evidence in his case to show that another person was responsible for the one-pot methamphetamine found" in the home he was living in. He relies on the facts that he had told officers he had been in the hospital for several days before his arrest, his fingerprints were not recovered on any of the items tested by the lab, and officers did not find any indicia that McKay was living at the residence during the earlier trash intercept. When McKay was interrogated at the police station, he denied knowledge of anything illegal at the Crestview

Drive residence and told officers that he was in the process of moving his things out of the Crestview Drive residence and to 17th Street.

Officers did find mail with McKay's name on it during the trash intercept at Crestview Drive, although the mail did not contain the Crestview Drive address. McKay had at least previously lived at the residence, and through surveillance, it was confirmed he was still spending at least some of his time at the property. A prescription filled by McKay the day before the search listed the Crestview Drive residence as his address. Additionally, McKay was seen leaving the property only a short time before officers executed a search warrant. When the officers entered the residence, the odor of hydrochloric acid was apparent. During the search, they located a suitcase in the room appearing to be McKay's room at the residence, and in it they found an in-progress one-pot batch of methamphetamine as well as a few men's shirts that appeared to be the right size to fit McKay. We believe there is substantial evidence to support the district court's finding that McKay was the person manufacturing the methamphetamine at the Crestview Drive residence.

### B. Sufficiency of Evidence: Child Endangerment

McKay maintains there was not substantial evidence to support his conviction for child endangerment. To sustain a conviction for child endangerment, the State had the burden to establish that on or about April 15th, (1) McKay was the parent, guardian, or person having custody or control of his child, (2) one of his children was under the age of fourteen, and (3) McKay acted with knowledge that he was permitting the child to be present at a location where methamphetamine, its salts, isomers, or salts of isomers, was manufactured, or

where a product was possessed with intent to manufacture methamphetamine. *See* Iowa Code § 726.6(1)(g).

McKay tries to raise doubts about the evidence of the age of his daughter[4] because it was testified to by only one officer "without reference to any information to support his claim." The testimony of the officer was uncontroverted, and we view the evidence in the light most favorable to the State. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

Next, McKay claims his conviction must be set aside because there was no evidence presented as to which parent had custody of the daughter. This claim misunderstands what is necessary for a finding that he had "custody or control of the child." Case law has established that "legal custody" is a narrower term than "custody," which in turn is narrower than "control." *State v. Friend*, 630 N.W.2d 843, 845 (Iowa Ct. App. 2001) (citing *State v. Johnson*, 528 N.W.2d 638, 640 (Iowa 1995)). "[A]n individual could have 'control' over a child without also having ordinary custody of a child. 'Control' only refers to the state of having restricting or governing power over someone, while 'custody' implicates not only a power of oversight but also a responsibility for the care of an individual." *Johnson*, 528 N.W.2d at 641. McKay told officers he and his children were staying at the residence at 17th Street. Moreover, he and his daughter were surveilled at that residence before the daughter's mother picked her up on the

---

[4] Although McKay had at least two of his children living with him, his son was fifteen years old at the time McKay was arrested and does not meet the criteria for the child endangerment charge. *See* Iowa Code § 726.6(1)(g); *see also* Iowa Code § 702.5 (defining "child" as "any person under the age of fourteen years").

day the search warrant was executed. Even if McKay did not have legal custody of his daughter, it is clear he had control of her, in the legal sense of the word.

Lastly, McKay claims that "witnesses were unable specifically to identify any room in either residence as the room in which [his daughter] allegedly slept." While we agree there was some question regarding which residence the children were living in at the time the residences were searched,[5] both residences contained pseudoephedrine purchased with the intent to manufacture methamphetamine. McKay had told police his numerous purchases of the drug were for "normal" use, but due largely to the shredded packaging found in each of the homes, the district court specifically found this statement lacked credibility. Additionally, nothing in the plain language of the statute requires that McKay allow his child to sleep or live in the specific room or rooms where methamphetamine, its salts, isomers, or salts of isomers, was manufactured, or where a product was possessed with intent to manufacture methamphetamine. *See* Iowa Code § 726.6(1)(g). Rather, it only requires that he allowed his to daughter "*to be present at a location*" where those items exist. *See id.* (emphasis added).

Substantial evidence supports the district court's conclusion that McKay committed child endangerment.

---

[5] The district court found that McKay's children were living at the Crestview Drive residence, but we do not believe the record affirmatively established that fact. Rather, the evidence generally showed that while McKay and the children had lived at the Crestview Drive residence, they either had moved or were in the process of moving to the 17th Street residence. The only evidence linking the children to the Crestview Drive residence was the testimony of one of the officers that there appeared to be "kids' rooms" in the house when it was searched and that McKay's fifteen-year-old son arrived at the Crestview Residence during the execution of the search warrant. However, McKay told officers he and the children were staying at the 17th Street residence and McKay's daughter was seen being picked up by her mother at the 17th Street residence.

### C. Cruel and Unusual Punishment

In the alternative, McKay maintains the sentence he received for manufacturing methamphetamine based upon 8.4 grams of a mixture or substance containing some amount of methamphetamine was cruel and unusual. However, McKay has not offered any authority to support his argument, nor has he applied the appropriate tests. *See State v. Oliver*, 812 N.W.2d 636, 641 (Iowa 2012) (discussing a categorical challenge based on either the characteristics of the crime or the criminal); *see also State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009) (discussing the test for evaluating whether a sentence is grossly disproportionate). For these reasons, this issue has not been properly presented for our review, and we decline to consider it. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [the defendant] might have made and then search for legal authority and comb the record for facts to support such arguments. Consequently, any error by the trial court . . . was not preserved for our review.").

### IV. Conclusion

Substantial evidence in the record supports McKay's convictions for manufacturing a controlled substance (methamphetamine) in an amount more than five grams and child endangerment. We decline to consider his argument regarding an alleged cruel and unusual sentence. We affirm.

**AFFIRMED.**