# IN THE SUPREME COURT OF IOWA

No. 22–0903

Submitted December 13, 2023—Filed March 8, 2024

**STATE OF IOWA,**

Resister,

vs.

**KADIN JEFFREY MILLER,**

Applicant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, District Associate Judge.

The defendant challenges the district court's determination that the crime of harassment was sexually motivated requiring the defendant to register as a sex offender pursuant to Iowa Code chapter 692A. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT REVERSED.**

McDonald, J., delivered the opinion of the court, in which all justices joined except Christensen, C.J., who filed a dissenting opinion.

Lucas M. Taylor (argued) of Anderson & Taylor, PLLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert (argued), Assistant Attorney General, for appellee.

**MᶜDONALD, Justice.**

Kadin Miller recorded himself having consensual sexual intercourse with his girlfriend. According to Miller, the relationship ended on bad terms. To "annoy[]" his former girlfriend and "get back at her" for the way the relationship ended, Miller posted the video of them having intercourse on a pornography website without his former girlfriend's consent. Miller was convicted of harassment in the first degree, in violation of Iowa Code section 708.7(1)(*a*)(5) (2019). He was sentenced to serve two years in prison for this offense and ordered to register as a sex offender. The narrow question presented in this appeal is whether the State proved beyond a reasonable doubt that Miller was required to register as a sex offender pursuant to Iowa Code chapter 692A.

I.

Under Iowa law, "[a] person who has been convicted of any sex offense . . . shall register as a sex offender as provided in [chapter 692A] if the offender resides, is employed, or attends school in this state." *Id.* § 692A.103. Although the sex offender registration statute is not punitive for constitutional purposes when applied to an adult, *State v. Aschbrenner*, 926 N.W.2d 240, 247–48 (Iowa 2019); *State v. Pickens*, 558 N.W.2d 396, 400 (Iowa 1997), the statute does impose significant consequences on those required to register. Information regarding the offender is placed on an internet site accessible to the public. Iowa Code § 692A.121. The offender is required to appear in person to register with the sheriff of each county where the offender has a residence, maintains employment, or is in attendance as a student. *Id.* § 692A.104(1). The offender is required to notify the sheriff within five business days of any changes in relevant information. *Id.* § 692A.104(2)–(5). Even when there is no change in relevant information, the offender is required to verify relevant information on a periodic basis. *Id.* § 692A.108. The offender is required to pay additional fees and civil

penalties. *Id.* § 692A.110. The offender is subject to exclusion zones, limiting where he or she can reside. *Id.* §§ 692A.113–114. The offender is also prohibited from working in certain occupations. *Id.* § 692A.115. Failure to comply with any of these requirements subjects the offender to additional criminal sanction. *Id.* § 692A.111.

The Code sets forth a comprehensive list of sex offenses that require an offender to register as a sex offender. *Id.* § 692A.102. Some offenses are per se sex offenses for which a conviction, standing alone, requires registration. *Cf. In re Det. of Huss*, 688 N.W.2d 58, 66 (Iowa 2004) (discussing per se sexually violent offenses in Iowa Code section 229A.2(8)). Examples of per se sex offenses include, but are not limited to, certain categories of sexual abuse, "dissemination or exhibition of obscene material to minors," "[r]ental or sale of hard-core pornography, if delivery is to a minor," and "[r]eceipt or possession of child pornography." Iowa Code § 692A.102(1)(*a*)(1)–(4), (10), (12). Other offenses are not per se sex offenses for which conviction, standing alone, requires registration. *Cf. Huss*, 688 N.W.2d at 66 (discussing non per se sexually violent offenses). For these offenses, an offender is required to register only if the state proves "beyond a reasonable doubt" to "a judge or jury" that the offense was "sexually motivated." Iowa Code § 692A.126(1).

The Code lists sixty-seven different offenses that are per se sex offenses. *Id.* § 692A.102. This case does not involve one of those sixty-seven offenses but instead involves a non-per se sex offense—harassment in the first degree, in violation of Iowa Code section 708.7(1)(*a*)(5). *See id.* § 692A.126(1)(*f*); *id.* § 708.7(5). The Code provides that "[a] person commits harassment when, with intent to intimidate, annoy, or alarm another person," the person "[d]isseminates, publishes, distributes, posts, or causes to be disseminated, published, distributed, or posted a photograph or film showing another person

in a state of full or partial nudity or engaged in a sex act, knowing that the other person has not consented to the dissemination, publication, distribution, or posting." *Id.* § 708.7(1)(*a*)(5).

The State charged Miller with this offense in April 2021. Miller moved to bifurcate any trial in the case. He argued the adjudication of guilt for the harassment offense should be tried separately from the determination of whether the alleged crime was sexually motivated. He argued these were separate and distinct issues and trying them together would prejudice him in any criminal trial. The district court granted the motion. It reasoned that the "nature of the case . . . favors bifurcation. The essential elements of harassment in the first degree do not implicate sexual motivation." The district court further reasoned that while the crime involved "images of a sexual nature, neither the elements nor the essential facts automatically inure to a sexual motivation. The defendant's motivation may have been sexual, but not sexual gratification." The district court noted that Miller's "motivation may also have been something else entirely different such as revenge or attention."

Although the district court granted Miller's motion to bifurcate the proceedings, there was no trial on the adjudication of guilt; Miller entered a written guilty plea as charged. The guilty plea provided Miller with notice that he could be placed on the sex offender registry. The guilty plea explained that Miller was entitled to a separate trial "on the sole question of whether this crime was 'sexually motivated.' " The guilty plea further provided that the issue of sexual motivation would be tried to the court rather than a jury. The guilty plea provided that the court "may consider [Miller's] statements in this plea in making that determination." In the written guilty plea, Miller admitted the following:

> That between May and July of 2019, I was in a relationship with [J.G.]. Our relationship ended on bad terms. I had in my possession a video recording of [J.G.] and myself engaged in sexual

> intercourse. On or about September of 2019, I posted the video on the internet. I knew [J.G.] had not consented to the posting of the video. My intent was to get back at her for our relationship ending on bad terms by annoying her with the video being public. The video was posted while I was in Boone County Iowa.

The written guilty plea also provided that Miller did not admit "that [he] committed this crime because [he] was 'sexually motivated.'" The district court accepted the plea and set the matter for sentencing.

While the harassment case was pending, Miller was charged with separate crimes in February 2022. He was charged with operating a motor vehicle while intoxicated (OWI), first offense, in violation of Iowa Code section 321J.2(2)(*a*) (2022), and possession of a controlled substance, second offense, in violation of Iowa Code section 124.401(5). Miller pleaded guilty to OWI, and the State agreed to dismiss the possession charge. Sentencing for the OWI offense was combined with sentencing on the harassment charge.

At the time set for sentencing, the district court held a combined proceeding. During the first phase of the proceeding, the district court held a trial on the issue of whether Miller's offense was sexually motivated. After the parties presented evidence and argument, the district court proceeded to sentencing.

Although the Code assigns the burden of proof to the State at trial on the issue of sexual motivation, *see* Iowa Code § 692A.126(1) (2019), the district court had the defense proceed first. Miller called Dr. Tracy Thomas to testify at trial. Dr. Thomas is a board-certified forensic psychologist. She frequently performs psychological evaluations for use in criminal and civil proceedings. In particular, she performs a variety of evaluations related to sex offenders, including risk assessments and psychosexual evaluations.

Dr. Thomas testified about this type of crime generally. She testified this crime was referred to as "revenge porn." Dr. Thomas explained that she had

performed research in this area and was "familiar with the research literature." She explained that people engage in this type of crime "for revenge. They are angry. They are upset. They feel like they have been embarrassed, . . . they feel like their self-esteem has taken a hit, so they engage in this behavior as a way to kind of let their anger out to get back at the victim, to embarrass them in the way that the person doing the revenge porn feels they have been embarrassed." At bottom, the crime "is really based on anger and revenge." Dr. Thomas testified that it would be "atypical" for this type of crime to be sexually motivated. To determine whether this type of crime was sexually motivated, Dr. Thomas testified she would look at whether the crime was meeting the sexual needs of the offender—i.e., whether they are "aroused by what they are doing." She would want to know whether the offender is "doing the behavior and then masturbating to it, fantasizing sexually about it. Are they getting physically aroused by it?" In her opinion, that would show a "sexual motivation component."

Dr. Thomas also opined about Miller's motivation specifically. She conducted a psychosexual evaluation of Miller. To prepare her psychosexual evaluation, she reviewed the trial information, minutes of testimony, and relevant criminal history. She then gave Miller a psychological test and conducted an in-person interview with him. She concluded that Miller did not have a paraphilic disorder. "There was no indication of antisocial traits, psychopathy." She also concluded there is "no indication of criminal thinking or just kind of a criminal or generally antisocial presentation." She testified Miller has a history of chronic depression and anxiety, has low stress tolerance, and carries great self-doubt regarding interpersonal relationships. These conditions cause Miller to suffer embarrassment and anger when his interpersonal relationships fail.

When asked whether Miller's commission of this crime was sexually motivated, Dr. Thomas testified that she did not see any evidence of sexual motivation. There was no evidence Miller was sexually aroused or sexually gratified by committing the crime. In addition, if Miller were aroused by posting sexual videos, he would tend to do it with some frequency. In her view, if the crime were done for the purpose of sexual gratification, it would be "ongoing." She concluded:

> I will say though that when I do these evaluations I would always look at the alternative hypotheses and saying what evidence is there that this is sexually motivated. And when I . . . make that list there . . . really is nothing on that side of sexually motivated, so I did consider both hypotheses, and all of the data in this case really lined up to indicate that it is based on revenge and a desire for him to get some of his self-worth -- feelings of self-worth back.

The State did not call an expert witness, but it did call three fact witnesses: Andrew Leeck, Amanda Moore, and investigating officer John Mayse. At the time of trial, Leeck was engaged to J.G. He testified that he used to be friends with and work with Miller. One day at work Miller showed him the video. Leeck testified that he began dating J.G. some time after Miller showed him the video. Leeck testified that he could identify J.G. in the video because of a distinct tattoo shown in the video. After Leeck started dating J.G., he told her about the video. J.G. asked her friend Amanda Moore to view the video. Moore testified that she viewed the video online at J.G.'s request. The video was posted on a pornography website. Moore recorded the video from the website using her phone. Moore's recording was admitted into evidence. The video showed Miller and J.G. engaged in sexual intercourse. The video posted on the website had over 1,000 views. There were comments posted about the video on the website, but they are not legible in the video. Officer Mayse testified that he was alerted to the video and started an investigation. He testified that J.G. did not consent to Miller posting the video online.

In findings pronounced from the bench and supplemented in the written sentencing order, the district court concluded the crime was sexually motivated. The district court reasoned that Miller had sex with J.G. for his sexual gratification and that sexual gratification "carried on when he determined that he was going to distribute that video." The district court's written sentencing order stated that "[c]hoosing a pornography website demonstrate[d] defendant's continued interest in the sexually obscene content of the video. It was available to him over the course of time to satisfy his interest in the ongoing sexual content of the video for his sexual gratification." The district court noted that "[s]howing [the video] to a male friend also demonstrate[d] [Miller's] ongoing interest in sharing his sexual interest in the video." The district court sentenced Miller to two years in prison for the harassment charge and one year in prison for the OWI offense to be served consecutively. The district court ordered Miller to register as a sex offender pursuant to chapter 692A.

The defendant appealed, and we transferred the case to the court of appeals. On appeal, the defendant argued the State failed to prove sexual motivation beyond a reasonable doubt. He also argued the district court considered an impermissible factor in imposing sentence and abused its discretion in imposing the sentences. The court of appeals found that there was good cause to consider the appeal, that there was sufficient evidence to support the district court's finding of sexual motivation, that the district court did not consider an improper factor in imposing sentence, and that the district court did not abuse its discretion in imposing sentence.

## II.

We then granted Miller's application for further review. "On further review, we have the discretion to review any issue raised on appeal." *State v. Vandermark*, 965 N.W.2d 888, 891 (Iowa 2021) (quoting *Burton v. Hilltop Care*

*Ctr.*, 813 N.W.2d 250, 255 (Iowa 2012)). We exercise our discretion to address only Miller's challenge to the sex offender registration requirement. The court of appeals decision is final as to all other issues.

The State was required to prove "beyond a reasonable doubt" that Miller's crime was sexually motivated. Iowa Code § 692A.126(1); *see also id.* § 708.7(5). "Reasonable doubt is one of the most recognizable concepts in our criminal justice system. It sets forth a demanding burden of proof on the government." *State v. Davis*, 975 N.W.2d 1, 9 (Iowa 2022). To meet this demanding standard, the State was required to introduce evidence that could convince a rational fact finder that the crime was sexually motivated. *See State v. Chapman*, 944 N.W.2d 864, 871 (Iowa 2020). In reviewing the evidence, we "consider all evidence in the record, including evidence that does not support" the finding. *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). Evidence raising only "suspicion, speculation, or conjecture" is not sufficient evidence to support a finding. *Id.* (quoting *State v. Leckington*, 713 N.W.2d 218, 221 (Iowa 2006)).

" 'Sexually motivated' means that one of the purposes for commission of a crime [was] the purpose of sexual gratification of the perpetrator of the crime." Iowa Code § 229A.2(10) (emphasis omitted); *see also id.* § 692A.101(29) (defining "sexually motivated" for the purposes of chapter 692A to mean "the same as defined in section 229A.2"). Under the plain language of the statute, it was not sufficient for the State to show that the crime involved sexual content or the offender had an interest in sexual content. Instead, the State was required to prove the "commission of [the] crime" was for the "purpose of sexual gratification of the perpetrator of the crime." *Id.* § 229A.2(10). As applied here, that means the State was required to prove beyond a reasonable doubt that Miller's harassment of J.G. was done for the purpose of his sexual gratification. *Cf.*

*Chapman*, 944 N.W.2d at 871 (stating the fact finder must find "beyond a reasonable doubt that the child endangerment was sexually motivated").

We cannot conclude the State proved its case beyond a reasonable doubt. First, the district court's findings did not focus on the relevant statutory inquiry—whether the crime was sexually motivated. Instead, the district court focused on whether Miller had a sexual interest in the video. Evidence that Miller showed Leeck the video, the district court reasoned, was evidence of Miller's "ongoing interest in sharing his sexual interest in the video." The district found that Miller posted the video on a pornography website, Pornhub, to make the video "available to him over the course of time to satisfy his interest in the ongoing sexual content of the video for his sexual gratification." But the question before the district court was not whether the video was available to Miller on the website. The question before the district court was whether Miller's commission of the crime—the harassment of J.G. by posting without her consent a video of her engaged in a sex act—was done for the purpose of his sexual gratification. *See* Iowa Code § 229A.2(10); *see also id.* § 692A.101(29).

Second, even when the district court focused on the statutory standard, the district court's inferences were not reasonable or supported by the record. The district court reasoned that because the sex act was performed for the purposes of sexual gratification, then Miller's act of posting the video several months later was also for the purposes of sexual gratification. In the district court's view, the sexual gratification that Miller received during sexual intercourse "carried on" when he published the video. But the logic does not follow. The two incidents were separate acts occurring months apart. Miller's motivation in filming a consensual sex act with his then-partner has no bearing on his motivation to post that video on the internet at least three months later after the parties had ended their relationship. *See State v. Isaac*, 756 N.W.2d

817, 820 (Iowa 2008) (reversing conviction for indecent exposure and explaining that it was not sufficient to establish exposure was sexually motivated merely because in a separate act "prior to this exposure [the defendant] sought to satisfy his sexual desires" (emphasis omitted)). Similarly, the district court reasoned that Miller's showing the video to Leeck was evidence of sexual motivation, but the record does not support the inference. Leeck testified that when Miller showed him the online video, there "[w]asn't much discussion. I didn't make any comments, and I don't believe he did either at the time so it was really out of nowhere honestly." Likewise, the district court's speculation that Miller could have posted the video on a pornography website for the purpose of accessing it for his own sexual gratification is not a reasonable inference given that Miller had possession of the video and did not need to post it to access it.

Third, setting aside these issues with the district court's finding, when the record is viewed as a whole, the State simply failed to prove its case beyond a reasonable doubt. It is true that intent or purpose is seldom capable of direct proof and that we allow the fact finder to infer that a person acted with the purpose to arouse or gratify the person's sexual desires from the person's "conduct, remarks, and all surrounding circumstances." *State v. Jorgensen*, 758 N.W.2d 830, 837 (Iowa 2008). But, even allowing for that, the State failed to marshal the evidence necessary to prove that Miller committed the crime of harassment for his own sexual gratification. In the written guilty plea accepted by the court, Miller stated his purpose was "to get back at [J.G.] for our relationship ending on bad terms." The State failed to present evidence of any statements supporting an inference that Miller's commission of the crime of harassment was sexually motivated. *Cf. State v. Rodriguez*, No. 15–1002, 2016 WL 4051696, at *1 (Iowa Ct. App. July 27, 2016) (holding defendant's statements made during an assault were substantial evidence of sexual motivation). The

State failed to present evidence of conduct supporting a reasonable inference that Miller's commission of the crime of harassment was sexually motivated. *Cf. Jorgenson*, 758 N.W.2d at 837 (finding sufficient evidence of sexual gratification based on the defendant's fondling of his penis); *State v. Busch*, No. 19–1612, 2020 WL 7385256, at *5 (Iowa Ct. App. Dec. 16, 2020) (holding that defendant touching of victim's private area was substantial evidence of sexual motivation); *State v. Blair*, 798 N.W.2d 322, 326 (Iowa Ct. App. 2011) (finding there was sufficient evidence of intent to satisfy sexual desires based on defendant's stroking his penis). The State failed to present evidence of any surrounding circumstances supporting a reasonable inference that Miller's commission of the crime of harassment was sexually motivated. *Cf. State v. Kuhn*, No. 19–1895, 2021 WL 1017128, at *4–5 (Iowa Ct. App. Mar. 17, 2021) (discussing circumstances of surreptitious recording scheme as sufficient evidence to prove sexual motivation).

In contrast to the lack of any evidence in support of the State's case, Miller presented strong evidence that his commission of the crime of harassment was not sexually motivated. Dr. Thomas opined to a reasonable degree of medical certainty, after reviewing the relevant scientific literature and conducting a psychosexual evaluation of Miller, that the crime "was not sexually motivated and that [Miller was] not the typical person who would be put on the sex offender registry given that lack of sexual motivation." Instead, she opined, Miller posted the video for the purpose of revenge and not for the purpose of his own sexual gratification. Dr. Thomas's opinion was unrebutted by expert testimony and unrebutted by any other evidence supporting a contrary conclusion. We do not imply and do not hold that the State was required to provide a competing expert to rebut Dr. Thomas's opinion, but it was required to come forward with some

evidence that would prove sexual motivation beyond a reasonable doubt when the record is viewed as a whole. The State failed to do that here.

In reaching a contrary conclusion, the dissent relies on evidence not in the record, including data regarding usage of the pornography website at issue in this case and research theories, findings, and conclusions contained in secondary source materials. This evidence may have been relevant to the question presented to the district court, but the State did not introduce any such evidence. Our task on appeal is to judge the sufficiency of the evidence admitted at trial and not the possible sufficiency of the evidence in a different trial. The dissent concedes, on the actual record made in this case, we would be creating a per se sex offense but argues that creation of a per se sex offense would be "consistent with what the legislature intended." We respectfully disagree. The legislature identified sixty-seven per se sex offenses, *see* Iowa Code § 692A.102, but harassment in the first degree is not one of them.

Were we to conclude this record was sufficient to prove beyond a reasonable doubt that this crime was sexually motivated, we would transform this crime of harassment into a per se sex offense. That we cannot do. The legislature has drawn a distinction between per se sex offenses and other offenses that require the state to prove beyond a reasonable doubt that one of the purposes for commission of the crime was the sexual gratification of the offender. If the legislature wanted to treat a violation of section 708.7(1)(*a*)(5) as a per se sex offense, it certainly knew how to do so, but it did not do so. "[I]t is not our role to rewrite the Iowa statute in the guise of interpretation," construction, and application of the statute. *Goche v. WMG, L.C.*, 970 N.W.2d 860, 866 (Iowa 2022). "We must give effect to the statutory requirement providing that a district court can order a defendant to register as a sex offender only upon finding beyond a reasonable doubt that the defendant's conduct was sexually

motivated." *Chapman,* 944 N.W.2d at 873. Thus, on this record, under this statutory scheme, we must conclude the State failed to prove beyond a reasonable doubt Miller harassed J.G. for the purposes of his own sexual gratification.

### III.

This brings us to the question of remedy. We discussed this issue of remedy in some detail in *State v. Chapman. Id.* at 874–78. In that case, the district court improperly considered the minutes of testimony in making the determination that the defendant's crime was sexually motivated after the defendant entered an *Alford* plea to the underlying crime. *Id.* at 872–73. We concluded this was akin to the district court considering an improper factor at sentencing and remanded the case to afford the state "the opportunity to establish that Chapman's conduct was sexually motivated beyond a reasonable doubt." *Id.* at 878. But this case does not involve a procedural or evidentiary error. This case involves a failure of proof at trial.

A party that fails to present sufficient evidence to prove its case on the merits in the trial court does not get a do-over. *See Des Moines Civ. & Hum. Rts. Comm'n v. Knueven,* 988 N.W.2d 694, 705 (Iowa 2023) (concluding there was insufficient evidence under correct legal standard and remanding for dismissal of the count in a civil case); *State v. Mong,* 988 N.W.2d 305, 315 (Iowa 2023) (holding there was insufficient evidence to support criminal conviction and remanding for dismissal of that charge); *In re D.S.,* 856 N.W.2d 348, 355 (Iowa 2014) (holding there was insufficient evidence to support delinquency adjudication and remanding for dismissal of petition); *Henderson v. Mullenix,* No. 19–0626, 2020 WL 1049872, at *3 (Iowa Ct. App. Mar. 4, 2020) (holding there was insufficient evidence to support issuance of protective order and remanding for dismissal); *accord State v. Jackson,* 819 N.W.2d 288, 297 (Wis.

Ct. App. 2012) (holding there was insufficient evidence of sexual motivation and remanding to amend judgment and remove requirement that defendant register as a sex offender). We thus vacate that part of the court of appeals decision affirming the district court's finding that Miller's crime was sexually motivated, and we reverse the district court's finding that Miller's crime was sexually motivated.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT REVERSED.**

All justices concur except Christensen, C.J., who files a dissenting opinion.

**CHRISTENSEN, Chief Justice (dissenting).**

Miller not only made a video of himself engaging in sexual intercourse with the victim, but he also posted it on Pornhub—a pornographic website that anyone can access—and personally went around showing it to at least one other person without the victim's knowledge or consent. Yet, the majority takes the untenable position that Miller's actions were not sexually motivated. I must respectfully dissent and would affirm the district court's finding that Miller's actions were sexually motivated, thereby requiring him to register as a sex offender pursuant to Iowa Code chapter 692A (2019). If this is not the sort of case that the legislature intended to result in the perpetrator's registration as a sex offender, then I do not know what set of facts is.

## I. Background Facts and Information.

This case involves what is colloquially referred to as "revenge porn." "[R]evenge porn" is typically understood as "the distribution of sexually graphic images of individuals without their consent." Danielle Keats Citron & Mary Anne Franks, *Criminalizing Revenge Porn*, 49 Wake Forest L. Rev. 345, 346 (2014) [hereinafter Citron & Franks]. It includes images originally obtained with *and* without consent, "usually within the context of a private or confidential relationship." *Id.* However, contrary to what the term "revenge porn" suggests, many individuals who distribute sexually graphic images do so with motives other than personal vindictiveness, such as "greed, voyeurism, and self-aggrandizement." Mary Anne Franks, Cyber C.R. Initiative, *Drafting an Effective "Revenge Porn" Law: A guide for Legislators* 2 (2021) [hereinafter Franks, *A Guide for Legislators*]. In a study conducted by the Cyber Civil Rights

Initiative (CCRI),[1] "the vast majority of perpetrators—nearly 80%—report[ed] being motivated by something other than the desire to hurt the victim." *Id.* at 2; *see also* Asia A. Eaton, Holly Jacobs, & Yanet Ruvalcaba, Cyber C.R. Initiative, *2017 Nationwide Online Study of Nonconsensual Porn Victimization and Perpetration: A Summary Report* 4 (2017) [hereinafter Eaton, Jacobs, & Ruvalcaba, *2017 Summary Report*].

Further, "the term revenge porn implies that the victim instigated the harm by doing something for which the perpetrator is seeking revenge," thereby supporting "rape myths that blame victims for their own abuse." Yanet Ruvalcaba & Asia A. Eaton, Am. Psych. Ass'n, *Nonconsensual Pornography Among U.S. Adults: A Sexual Scripts Framework on Victimization, Perpetration, and Health Correlates for Women and Men* 1 (2019). Thus, the act of distributing sexually graphic images without the person's consent is more appropriately described by the term "nonconsensual pornography," which is a form of "image-based sexual abuse." Clare McGlynn & Erika Rackley, *Image-Based Sexual Abuse*, 37(3) Oxford J. Legal Stud. 534, 536–37 (2017) [hereinafter McGlynn & Rackley] ("The use of the phrase 'sexual abuse' immediately and accurately conveys the significant harms that may occur and reflects the experiences of victim-survivors. It also identifies image-based sexual abuse as a form of sexual violence, locating it within sexual offence law and policies. . . . [P]erhaps the most familiar form of image-based sexual abuse is the practice of so-called 'revenge

---

[1]The CCRI is a "nonprofit organization dedicated to the protection of civil rights in the digital era." Brief for Cyber Civil Rights Initiative and Legal Scholars as Amici Curiae Supporting Petitioners at 1, *Gonzalez vs. Google LLC*, 598 U.S. 617 (2023) (No. 21–1333). "CCRI works with tech-industry leaders, policymakers, courts, and law enforcement to address online abuses including nonconsensual pornography . . . ." *Id.* In 2017, CCRI conducted the first-ever nationwide study that "profile[d] the rates of nonconsensual pornography victimization and perpetration, including motives for perpetration, deterrents to perpetration, and health outcomes for victims." Eaton, Jacobs, & Ruvalcaba, *2017 Summary Report* at 4–5.

porn.' " (footnote omitted)); *see also* Citron & Franks, 49 Wake Forest L. Rev. at 346, 362.

Prior to 2013, only three states, New Jersey, Alaska, and Texas, had criminal laws that could be directly applied to nonconsensual pornography. Franks, *A Guide for Legislators* at 5 (noting only three states had statutes targeting nonconsensual pornography prior to CCRI being founded); *cf.* Cyber C.R. Initiative, *History/Mission/Vision*, https://cybercivilrights.org/about/ [https://perma.cc/8DBJ-7FFY] (last visited Feb. 29, 2024) (stating that CCRI was founded in 2013). As of today, forty-eight states have enacted laws targeting nonconsensual pornography. Franks, *A Guide for Legislators* at 5; *see also* Cyber C.R. Initiative, *Nonconsensual Distribution of Intimate Images*, https://cybercivilrights.org/nonconsensual-distribution-of-intimate-images/ [https://perma.cc/5WLU-MBBN] (last visited Feb. 29, 2024) (collecting all state statutes related to nonconsensual pornography). In 2017, Iowa became the thirty-fifth state to criminalize the dissemination of nonconsensual pornography when it enacted Iowa Code section 708.7(1)(*a*)(5). *See* 2017 Iowa Acts ch. 117, § 2 (codified at Iowa Code § 708.1(1)(*a*)(5) (2018)); Brianne Pfannenstiel, *Iowa House Passes Bill Criminalizing 'Revenge Porn,'* Des Moines Reg. (Mar. 27, 2017), https://www.desmoinesregister.com/story/news/politics/2017/03/27/iowa-house-passes-bill-criminalizing-revenge-porn/99714656/ [https://perma.cc/6QRY-4NHV] ("Iowa . . . bec[a]me the 35th state with legislation aimed at preventing the spread of nonconsensual pornography.").

Under Iowa Code section 708.7(1)(*a*)(5), "[a] person commits harassment when, with intent to intimidate, annoy, or alarm another person," the person:

> Disseminates, publishes, distributes, posts, or causes to be disseminated, published, distributed, or posted a photograph or film showing another person in a state of full or partial nudity or engaged in a sex act, knowing that the other person has not consented to the dissemination, publication, distribution, or posting.

If such a person's conduct was sexually motivated, the person must register as a sex offender pursuant to Iowa Code chapter 692A. *Id.* § 692A.126(1)(*f*); *id.* § 708.7(5). " 'Sexually motivated' means that one of the purposes for commission of a crime is the purpose of sexual gratification of the perpetrator of the crime." *Id.* § 229A.2(10) (emphasis omitted).

On appeal, Miller argues that the State failed to present sufficient evidence to prove that his actions were sexually motivated. However, the majority understates the significant burden an appellant faces when the issue on appeal is a challenge to the sufficiency of the evidence. We review sufficiency of the evidence claims for errors at law. *State v. Leckington*, 713 N.W.2d 218, 221 (Iowa 2006). The district court's finding "must be supported by substantial evidence which is 'such evidence as could convince a rational trier of fact that [the] defendant is guilty beyond a reasonable doubt.' " *Id.* (alteration in original) (quoting *State v. Robinson*, 288 N.W.2d 337, 339 (Iowa 1980)). While we do consider all the evidence presented, not just the evidence tending to support a finding of guilt, we view the record "in a light most favorable to the State," which "includes all legitimate inferences that may fairly and reasonably be deduced from the evidence." *Id.* (citing *State v. Casady*, 597 N.W.2d 801, 804 (Iowa 1999)).

Determining whether the evidence in the record could reasonably support a finding of guilt beyond a reasonable doubt "does not require a court to 'ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt.' " *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the [state], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362

(1972), *abrogated on other grounds by Ramos v. Louisiana*, 140 S. Ct. 1390 (2020)).

We have recognized that "[f]indings of fact in a bench trial have the effect of a special verdict," and that "[t]he district court's findings are binding on us if those findings are supported by substantial evidence." *State v. Talbert*, 622 N.W.2d 297, 301 (Iowa 2001) (en banc). Therefore, we must view "the evidence in its light most favorable to the judgment, and we construe the findings of the trial court liberally to uphold, rather than defeat, the result reached." *Id.* (quoting *Claus v. Whyle*, 526 N.W.2d 519, 523 (Iowa 1994)).

**II. Miller's Actions Were Sexually Motivated.**

Much like the district court and court of appeals, I believe there is sufficient evidence for a rational trier of fact to have found that Miller's actions were sexually motivated. Iowa caselaw discussing section 708.7(1)(*a*)(5) is limited, and caselaw presenting a similar set of facts to these is even more limited. However, the "sexual motivation" requirement is found in other areas of Iowa's criminal code and can provide guidance for the analytical framework to apply here.

Specifically, the crime of indecent exposure, which requires a person to, among other things, expose their "genitals or pubes to someone other than a spouse." *State v. Isaac*, 756 N.W.2d 817, 819 (Iowa 2008) (quoting *State v. Adams*, 436 N.W.2d 49, 50 (Iowa 1989)). But "[i]t is only exposure with a sexual motivation, inflicted upon an unwilling viewer, which will constitute the offense." *Id.* (quoting 4 John J. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law and Procedure* § 217, at 63 (1979)). Such sexual motivation "can be inferred from the defendant's conduct, . . . remarks, and the surrounding circumstances." *Id.* at 820. Because a defendant will seldom admit "to having the intention which the crime requires," *State v. Radeke*, 444 N.W.2d 476, 478–79 (Iowa 1989)

(quoting Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 3.5(f), at 226 (2d ed. 1986) [hereinafter LaFave & Scott, *Criminal Law*]), a defendant's intent is "rarely capable of direct proof" and instead generally must be shown by circumstantial evidence, *State v. Delay*, 320 N.W.2d 831, 835 (Iowa 1982) (citing *State v. Morelock*, 164 N.W.2d 819, 822 (Iowa 1969)).

From the record, we know that the video in question depicts Miller and the victim engaging in sexual intercourse. I agree that Miller must have been sexually motivated at the time of posting—not at the time the video was taken. However, despite the majority's assertion to the contrary, I believe Miller's decision to post the video on Pornhub is circumstantial evidence of his sexual motivation.

In 2019, Pornhub, "the world's largest pornographic website," had nearly 42,000,000,000 total individual visits, an average of more than 115,000,000 visits per day, and more than 1,300 searches conducted every second. Joshua B. Grubbs & Shane W. Kraus, *Pornography Use and Psychological Science: A Call for Consideration*, 30(1) Current Directions Psych. Sci. 68, 68 (2021) (footnote omitted); *see also* Beáta Bőthe, István Tóth-Király, Nóra Bella, Marc N. Potenza, Zsolt Demetrovics, & Gábor Orosz, *Why Do People Watch Pornography? The Motivational Basis of Pornography Use*, 35(2) Psych. Addictive Behav. 172 (2021) [hereinafter Bőthe et.al]. "Sexual pleasure" is the most frequently reported reason for visiting a pornographic website. Bőthe et. al, 35(2) Psych. Addictive Behav. 172 (emphasis omitted) (stating that sexual pleasure was also the most frequently reported reason for visiting pornographic websites in studies conducted in 2001, 2002, 2011, and 2016). Understanding this, it is difficult to imagine there was no sexual motivation behind Miller's decision to post a video displaying sexually explicit content onto a website that most people view for their own sexual gratification. This is especially so given that Miller himself used this website to access the video at least once when he showed the posting to Leeck,

undermining the majority's position that Miller's act of showing Leeck the posted video is not evidence of Miller's sexual motivation because "Miller had possession of the video and did not need to post it to access it." If Miller had possession of the video and did not need to post it to access it, why show Leeck the video on Pornhub rather than the video saved to his mobile device? Showing the video to Leeck on Pornhub is further circumstantial evidence that Miller had some form of sexual motivation or gratification from posting the video on a pornographic website without the victim's consent.

Further, Miller's act of showing Leeck the video is substantially similar to the type of conduct we prohibit with the indecent exposure laws. Miller showed Leeck a video that depicted his erect genitals to an individual who was not his spouse. *See Isaac,* 756 N.W.2d at 819 (stating "[t]he exposure of genitals . . . to someone other than a spouse" is the first element to the crime of indecent exposure (quoting *Adams,* 436 N.W.2d at 50)). It is evident this exposure was inflicted upon an unwilling viewer, as Leeck's testimony stated he had not asked Miller to see the video and that the display was "really out of nowhere honestly." *See id.* Miller's display of his genitalia to Leeck would be "sexually motivated" under Iowa's indecent exposure law. *See id.* Therefore, Miller's flashing of the video to Leeck is a surrounding circumstance that supports a finding of sexual motivation here. *See id.* at 819–20.

The majority focuses heavily on the testimony of Miller's expert, Dr. Thomas, to support its conclusion that Miller's actions were not sexually motivated. Dr. Thomas testified that to determine whether someone's actions were sexually motivated, she looks to see if "they [are] doing the behavior and then masturbating to it, fantasizing sexually about it[,] . . . [or] getting physically aroused by it." Unless Miller himself admits to obtaining some form of sexual gratification from posting the video or he is caught masturbating to the posted

video, the behaviors described by Dr. Thomas are highly unsusceptible to direct evidence. This shows the importance of the surrounding circumstances, i.e., how Miller chose to disseminate the video.

A pornographic website is inherently sexual. Miller did not post the video to a forum that did not have this same inherent sexuality (i.e., Facebook, YouTube, Snapchat, etc.). He did not send it to the victim's friends, family, coworkers, or any other individual connected to the victim. Had Miller disseminated it in some manner other than a pornographic website, it would be a closer call as to whether his actions were sexually motivated; however, that is not the set of facts we are presented with here.

Instead, we have an individual who recorded himself having sexual intercourse with the victim and posted the video to a pornographic website without the victim's consent. Viewing the evidence in a light most favorable to the State, and in a manner that seeks to uphold the district court's finding rather than reverse the finding, I believe there was sufficient evidence for any rational trier of fact to have determined that Miller's actions were sexually motivated. *See Talbert*, 622 N.W.2d at 301; *Casady*, 597 N.W.2d at 804; *see also State v. Dible*, 538 N.W.2d 267, 270 (Iowa 1995) ("Findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and, in case of ambiguity, we will construe findings to uphold, rather than defeat, the judgment."); *Allied Mut. Cas. Co. v. Dahl*, 122 N.W.2d 270, 278 (Iowa 1963) ("In case of doubt or ambiguity, findings will be construed to uphold, rather than to defeat, the judgment."); *State v. Abdinur*, No. 17–0247, 2018 WL 2731624, at *2 (Iowa Ct. App. June 6, 2018); *Labs v. Karteus*, No. 13–0777, 2014 WL 250254, at *2 (Iowa Ct. App. Jan. 23, 2014) (citing *Tindell v. Apple Lines, Inc.*, 478 N.W.2d 428, 430 (Iowa Ct. App. 1991)) ("On substantial evidence review, we construe the trial court's findings broadly and liberally.").

The majority also cites several cases to support its finding that there was not sufficient evidence to show Miller's actions were sexually motivated, but those cases all included situations in which there was direct evidence of sexual motivation. In *State v. Rodriguez*, during the defendant's strangulation of his former wife, he stated, "I know it sounds weird, but you're kind of sexy when you're knocked out." No. 15–1002, 2016 WL 4051696, at *1 (Iowa Ct. App. July 27, 2016). The court of appeals affirmed the finding that this statement was sufficient to show the defendant's actions were sexually motivated. *Id.* In *State v. Jorgensen*, the defendant was caught openly masturbating after following an unidentified woman through the store, and such action was relied on to show sexual motivation. 758 N.W.2d 830, 837 (Iowa 2008). In *State v. Busch*, the defendant, an adult, had touched a child's private area, and the court of appeals found this sufficient to show that the defendant's action was sexually motivated. No. 19–1612, 2020 WL 7385256, at *5 (Iowa Ct. App. Dec. 16, 2020). In *State v. Kuhn*, the defendant was caught putting a video camera in a restroom prior to allowing his underage female employees to enter the bathroom to change clothes or use the restroom. No. 19–1895, 2021 WL 1017128, at *4 (Iowa Ct. App. Mar. 17, 2021). The court of appeals found this conduct to be evidence that the defendant acted to arouse or satisfy his sexual desires by recording his employees in various states of undress. *Id.* at *4–5.

While I agree that these cases are situations in which sexual motivation was properly found, I do not believe these cases support the majority's contention that Miller's actions were not sexually motivated. All the cited cases involve circumstances in which there was direct evidence of the defendant's sexual motivation. But we know that a defendant seldom admits "to having the intention which the crime requires," *Radeke*, 444 N.W.2d at 478 (quoting LaFave & Scott, *Criminal Law* § 3.5(f), at 226), and that a defendant's intent is "rarely capable of

direct proof," *Delay*, 320 N.W.2d at 835. Again, absent Miller admitting to obtaining some form of sexual gratification from posting the video or being caught masturbating to the posted video, there is unlikely to ever be direct evidence of sexual motivation in this scenario.

By not finding Miller's actions to be sexually motivated, the majority is foreclosing any possibility of these circumstances being considered sexually motivated absent direct evidence. This is a position I cannot join. "Although there is no direct evidence that [Miller] was sexually aroused at the time of [posting the video], this does not undermine [my] confidence in the determination that [Miller] acted with sexual motivation." *In re Det. of Blaise*, 830 N.W.2d 310, 321 (Iowa 2013).

The majority believes that if we find the "record was sufficient to prove beyond a reasonable doubt that this crime was sexually motivated, we would transform this crime of harassment into a per se sex offense." This is not true. If we were to find Miller's actions to be sexually motivated, we, at most, would create a per se sex offense for individuals who post sexually graphic materials onto pornographic websites without consent. Such a finding would not render every act of harassment under Iowa Code section 708.7(1)(*a*)(5) a sex offense.

And, in fact, categorizing the nonconsensual posting of sexually explicit material to a pornographic website as a sex offense is likely appropriate. The perpetrators of such crimes are engaging in image-based sexual abuse, Citron & Franks, 49 Wake Forest L. Rev. at 346, 362; McGlynn & Rackley, 37(3) Oxford J. Legal Stud. at 536–37, and the victims of such image-based sexual abuse suffer significant psychological impacts:

> [N]early all victims (93%) reported suffering significant emotional distress as a consequence of victimization. Eighty-two percent said they suffered significant impairment in social, occupational, or other functioning. More than half experienced suicidal thoughts; forty-two percent have sought psychological help. Nearly half of all victims

reported being stalked or harassed online by people who have viewed their material. A third of victims reported that they experienced offline stalking or harassment by people who viewed their material.

Victims also reported serious effects on their romantic and family relationships. A significant percentage of victims reported that the experience jeopardized their relationships with family (34%) and friends (38%); with thirteen percent reporting that being victimized resulted in the loss of a relationship with a significant other. More than half of victims fear that the material will be discovered by their current or future children. Forty percent of victims fear the loss of a current or future partner if that partner learns of the disclosure.

With regard to professional and educational impact, forty-two percent of victims had to explain the situation to professional or academic supervisors, coworkers, or colleagues. More than a quarter of victims left work or school for a period of time as a result of the disclosure. Eight percent quit their jobs or dropped out of school; six percent were fired from their jobs or expelled from school. More than half experienced difficulty concentrating at work or school due to the experience. Thirty-nine percent believed that the experience affected their professional advancement.

Victims often limited their use of social media in the wake of their experience. A quarter of victims closed down an email address due to abusive or harassing messages stemming from the disclosure of their intimate material. A quarter shut down their Facebook accounts, more than ten percent closed their Twitter accounts, and eight percent closed their LinkedIn accounts. Forty-two percent of victims report having thought about legally changing their name and three percent of victims have done so.

Mary Anne Franks, *"Revenge Porn" Reform: A View from the Front Lines*, 69 Fla. L. Rev. 1251, 1263–64 (2017) (footnotes omitted) (reporting the findings of a 2013 study conducted by the CCRI).

Finding Miller's actions to be sexually motivated would be consistent with what the legislature intended when it decided to criminalize nonconsensual pornography. Iowa Code section 708.7(5), which references how to determine whether a person found guilty of harassment should register as a sex offender pursuant to chapter 692A, was added to section 708.7 in 2009. 2009 Iowa Acts

ch. 119, § 53 (codified at Iowa Code § 708.7(5) (2011)). It was not until 2017 that Iowa Code section 708.7(1)(*a*)(5) was enacted to criminalize so called "revenge porn." 2017 Iowa Acts ch. 117, § 2 (codified at Iowa Code § 708.7(1)(*a*)(5) (2018)). Thus, from 2009 to 2017, the following conduct was considered harassment under Iowa Code section 708.7:

> (1) Communicates with another by telephone, telegraph, writing, or via electronic communication without legitimate purpose and in a manner likely to cause the other person annoyance or harm.

> (2) Places a simulated explosive or simulated incendiary device in or near a building, vehicle, airplane, railroad engine or railroad car, or boat occupied by another person.

> (3) Orders merchandise or services in the name of another, or to be delivered to another, without the other person's knowledge or consent.

> (4) Reports or causes to be reported false information to a law enforcement authority implicating another in some criminal activity, knowing that the information is false, or reports the alleged occurrence of a criminal act, knowing the act did not occur.

Iowa Code § 708.7(1)(*a*)(1)–(4) (2009). None of the conduct mentioned above carries an inherent sexual connotation. It would logically follow that for a person to be registered as a sex offender for that conduct, there would have to be evidence of a sexual motivation behind the perpetration of the crime.

Unlike Iowa Code section 708.1(*a*)(1)–(4), section 708.7(1)(*a*)(5) is inherently sexual as it holds one who

> [d]isseminates, publishes, distributes, posts, or causes to be disseminated, published, distributed, or posted a photograph or film showing another person in a state of full or partial nudity or engaged in a sex act, knowing that the other person has not consented to the dissemination, publication, distribution, or posting

criminally liable for harassment. *Id.* § 708.7(1)(*a*)(5) (2019). This inherent sexuality evidences the legislature's intent for individuals who violate section 708.7(1)(*a*)(5) to be required to register as sex offenders.

The legislature's discussion when House File 526, which sought to add section 708.7(1)(*a*)(5) to the Code, was being voted on is also instructive. The introductory remarks to House File 526 stated:

> Disseminating someone's nude image is a destructive invasion of their privacy that can cause irreversible harm to a person's physical and emotional well-being, reputation, and security. . . . However, in Iowa, there are currently no legal remedies for prosecuting those who distribute these types of images without consent. Typically, 90% or more of revenge porn victims are women. At last count, there were thirty-four states that had enacted laws to protect individuals from being victimized in this way.

*House Video HF 526 by Heartsill of Marion*, Iowa Legislature, at 7:32:56– 7:44:45 PM (Mar. 27, 2017), https://www.legis.iowa.gov/dashboard?view =video&chamber=H&clip=H20170327163935379&dt=2017-03-27&offset=1039 6&bill=HF%20526&status=i&ga=87. This evidences a clear intent by the legislature to criminalize the type of behavior at issue in this case.

When House File 526 made it to the senate, section 708.7(5) was amended to require juveniles who violate section 708.7(1)(*a*)(5) to be tried in juvenile court and prevented them from being required to register as sex offenders. *Senate Video HF 526: S-3298 by Garrett of Warren*, Iowa Legislature, at 11:40:49– 11:41:26 AM (April 11, 2017), https://www.legis.iowa.gov/dashboard? view=video&chamber=S&clip=s20170411090621780&dt=2017-04- 11&offset=8976&bill=HF%20526&status=r&ga=87. Clearly, the legislature intended for adults who violate section 708.7(1)(*a*)(5) to be required to register as a sex offender.

Research shows that such a requirement is an effective deterrent to this type of conduct. Eaton, Jacobs, & Ruvalcaba, *2017 Summary Report* at 22. For

example, in one study of 159 individuals who reported having shared nonconsensual pornography, 60% of the perpetrators indicated that knowing they would be required to register as a sex offender might have stopped them from sharing the nonconsensual pornography. *Id.* This was the "most commonly chosen prohibitive factor participants chose in response to the question 'What might have stopped you from sharing the image(s)?' " *Id.* The second and third most reported prohibitive factors related to imprisonment and knowing that the nonconsensual distribution of sexually explicit materials was a felony. *Id.*

### III. Conclusion.

The majority analyzes the facts of this case through the lens of a reasonable person "unaffected by the prurient thoughts and desires of a sexually deviant person." *Isaac,* 756 at 822 (Streit, J., dissenting). By only focusing on Miller's stated intent—revenge—the majority forecloses any possibility that Miller's actions were sexually motivated. *See id.* Miller's actions were not those of a reasonable person, but of a person with a perverted mind. *See id.* The majority fails to consider that Miller could have had two concurrent motivations for posting the video—revenge *and* sexual gratification—and fails to consider the significant burden an appellant must overcome on a sufficiency of the evidence claim.

Miller's decision to post a video of himself engaging in sexual intercourse with the victim to a pornographic website without the victim's consent is sufficient circumstantial evidence for any rational tier of fact to have found Miller's actions were sexually motivated. The approach taken by the majority places an unfair burden on the state in proving a defendant's actions in violation of Iowa Code section 708.7(1)(*a*)(5) were sexually motivated in cases where there is no direct evidence. For these reasons, I must respectfully dissent from the majority and would affirm the district court's finding that Miller's actions were

sexually motivated, thereby requiring him to register as a sex offender pursuant to Iowa Code chapter 692A.